UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WESTERN NATIONAL ASSURANCE COMPANY and PIONEER SPECIALTY INSURANCE COMPANY, | CASE NO. 3:18-cv-05886-RBL |
| Plaintiff, | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | DKT. #21 |
| BURNS TOWING, INC., a Washington corporation; and KRISTINE A. ZACHARY, an individual, | |
| Defendant. | |

**INTRODUCTION**

THIS MATTER is before the Court on Plaintiffs Western National Assurance Company

and Pioneer Specialty Insurance Company's (collectively "The Insurers") Motion for Summary

Judgment. Dkt. #21. The Insurers issued commercial package policies effective from May 1,

2017, to May 1, 2019, to Defendants Burns Towing, Inc., and Kristine A. Zachary (collectively

"Burns"). The Insurers now seek a declaratory judgment that they have no duty to defend or

indemnify Burns with respect to a lawsuit filed by the Attorney General for the State of

Washington. The State's complaint alleges that Burns unlawfully sold impounded vehicles

1  belonging to active duty servicemembers and failed to use proper procedures to ascertain

2  whether a vehicle belongs to a servicemember.

3       For the following reasons, the Insurers' Motion is GRANTED.

4                                   **BACKGROUND**

5  **1.     The Underlying Lawsuit**

6       Burns is a Tacoma-based corporation that operates a large fleet of tow trucks. Burns has

7  contractual arrangements with private property owners and the Tacoma Police Department to

8  tow and impound unauthorized motor vehicles. Once Burns has taken custody of a vehicle and it

9  is deemed abandoned, it sends a written notice to the owner on record at the Depart of Licensing.

10  If an additional 15 days pass without a response, Burns sells the vehicle at public auction and

11  applies any proceeds to outstanding fees.

12       On September 11, 2018, the State brought a lawsuit against Burns under the Washington

13  State Service Members' Civil Relief Act (WSCRA), RCW 38.42. In contrast to the procedures

14  for selling an abandoned vehicle belonging to a civilian, WSCRA and its federal analog, 50

15  U.S.C. § 3958, require that a towing company obtain a court order before selling a vehicle

16  belonging to an active duty servicemember. Burns failed to do this when it sold the vehicle of

17  Petty Officer Second Class Alex Vaughn while he was deployed at sea and may have sold other

18  vehicles belonging to servicemembers in this manner as well.

19       The State's complaint also alleges a cause of action under Washington's Consumer

20  Protection Act, RCW 19.86. This claim concerns Burns' failure to use either the Department of

21  Defense database or a private service to check whether the registered owners of impounded

22  vehicles are on military status. This practice, according to the complaint, creates a risk that every

23  time Burns sells a vehicle the owner may be an active duty servicemember.

24

**2.     The Policies**

The Insurers issued four types of policies to Burns: a Commercial General Liability (CGL) policy, a Garagekeepers endorsement, a Business Auto policy, and a Motor Truck Cargo Legal Liability policy. Western issued these policies effective from May 1, 2017, to May 1, 2018, and Pioneer issued identical policies effective from May 1, 2018, to May 1, 2019.[1]

The CGL policy covers "bodily injury" and "property damage" resulting from an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. #22, Ex. B, at 9, 15. The definition of "property damage" includes "[l]oss of use of tangible property that is not physically injured." *Id*. at 15. The CGL policy excludes injury that was "expected or intended from the standpoint of the insured," property damage to "personal property in the care, custody or control of the insured," and "punitive or exemplary damages." *Id*. at 10, 12, & 17. However, the Insurers are still required to provide a defense if the policyholder is alleged to be liable for both punitive and compensatory damages. *Id*. at 17.

The Garagekeepers endorsement provides coverage for "all sums the insured legally must pay as damages for loss to a customer's auto or customer's auto equipment left in the insured's care while the insured is attending, servicing, repairing, parking or storing it in [their] garage operations." *Id*. at 27 (internal quotations omitted). "Loss" means "direct and accidental loss or damage and includes any resulting loss of use." *Id*. at 29. "Garage operations" is defined in part as "the ownership, maintenance or use of locations for the purpose of a business of selling, servicing, repairing, parking or storing customer's autos . . . ." *Id*. (internal quotations omitted).

---

[1] Because the parties do not represent that the policies issued in 2017 are materially different from the policies issued in 2018, the Court will only cite to the 2017 policies issued by Western.

1    The policy includes an exclusion for "theft," which is defined as "loss due to theft or conversion

2    caused in any way by you, your employees or by your stockholders." *Id*. at 28.

3         The Business Auto policy provides coverage for "all sums an insured legally must pay as

4    damages because of bodily injury or property damage to which this insurance applies, caused by

5    an accident and resulting from the ownership, maintenance or use of a covered auto. *Id*. at 21

6    (internal quotations omitted). Finally, the Motor Truck Cargo Legal Liability policy covers

7    "legal liability for loss to covered property while under [the insured's] care, custody, and control

8    and that [the insured] become[s] legally obligated to pay as a common or contract carrier under a

9    bill of lading, contract of carriage, or shipping receipt that is issued by [the insured] or that is

10   issued on [the insured's] behalf." *Id*. at 11 (internal quotations omitted).

**DISCUSSION**

12   **1.      Legal Standard**

13        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

14   file, and any affidavits show that there is no genuine issue as to any material fact and that the

15   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

16   an issue of fact exists, the Court must view all evidence in the light most favorable to the

17   nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty*

18   *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194,

19   1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence

20   for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The

21   inquiry is "whether the evidence presents a sufficient disagreement to require submission to a

22   jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

23   The moving party bears the initial burden of showing that there is no evidence which supports an

24

element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

"Interpretation of an insurance contract is a question of law." *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52 (2007). Terms are to be interpreted as the "average person purchasing insurance" would understand them. *Id*. While the insured has the burden of proving that claims fall within a grant of coverage, the insurer has the burden of proving that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). The duty to defend is broader than the duty to indemnify and arises "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo*, 161 Wash. 2d at 52-53. Ambiguities are construed in favor of triggering the duty to defend. *Id*. at 53. "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 761 (2002).

In Washington, in a declaratory judgment action, the duty to defend is determined by the facts alleged in the complaint. *Indian Harbor Ins. Co. v. Transform LLC*, 2010 WL 3584412, at *3 (W.D. Wash. Sept. 8, 2010) (citing *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wash. 2d 909, 911 (1969)). "Insurance companies are required to look beyond the allegations of the complaint and reasonably investigate when the allegations are in conflict with facts known to or readily ascertainable by the insurer, or if the allegations of the complaint were ambiguous or

inadequate." *Unigard Ins. Co. v. Leven*, 97 Wash. App. 417, 425 (1999). However, the insurer

may rely on extrinsic facts only to *trigger* the duty to defend, not deny it. *Grange Ins. Ass'n v.*

*Roberts*, 179 Wash. App. 739, 752 (2013) (citing *Woo*, 161 Wash. 2d at 52-54). "After obtaining

a declaration of noncoverage, an insurer will not be obligated to pay from that point forward."

*Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash. 2d 872, 885 (2013) (internal quotations omitted).

**2.      The Insurers' Duty to Defend and Indemnify Burns**

*a.      Whether the Alleged Injury was "Accidental" or Caused by an "Accident"*

The Insurers argue that summary judgment is appropriate because the allegations in the

State's complaint are outside the scope of the four policies issued to Burns. The Insurers offer

several arguments, but the most contentious is that there is no "accidental" conduct by Burns.

Consequently, the Insurers' argue, the alleged injury is not covered because it was not caused by

an "occurrence" and was not a "loss."[2] Burns advances no arguments concerning the Business

Auto and Motor Truck Cargo policies but argues that the allegations in the State's complaint

trigger coverage under the CGL and Garagekeepers policies. According to Burns, although

selling the cars may have been intentional, the resulting harm was "accidental" because Burns

did not realize that the sales were wrongful. Consequently, Burns contends that the allegations

fall within the definitions of "occurrence" and "loss." Burns also argues that any other outcome

would contradict the policy's stated coverage, which includes harm related to "garage

operations" such as selling vehicles.

The CGL policy covers injuries caused by an "occurrence," which is defined as an

"accident," the Garagekeepers endorsement covers damages for "loss" to a customer's auto,

---

[2] The Insurers offer a number of additional arguments, including that the injury was "expected or intended," that the complaint does not seek covered damages, that the autos were in Burns' "care, custody, or control" when they were sold, and that the "theft" exclusion applies. However, because the Court finds that there is no coverage because the complaint does not allege an "accident" or "accidental loss," there is no need to address these other arguments.

1 which is defined as "direct and accidental loss or damages," and the Business Auto policy

2 applies to injuries "caused by an accident." Dkt. #22, Ex. B, at 9, 15, 21, 27, & 29. Because the

3 policies do not contain definitions for "accident" and "accidental," the Court must use the terms'

4 "plain, ordinary meaning." *See State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C.*, 142 Wash.

5 App. 6, 13 (2007).

6        Washington courts have long held that, for an accident to occur, "[t]he means as well as

7 the result must be unforeseen, involuntary, unexpected and unusual." *Id*. (quoting *Safeco Ins. Co.*

8 *of Am. v. Butler*, 118 Wash.2d 383, 401 (1992)). Consequently, "an accident is never present

9 when a deliberate act is performed unless some additional unexpected, independent and

10 unforeseen happening occurs which produces or brings about the result of injury or death." *Id*.

11 (quoting *Butler*, 118 Wash.2d at 401). That said, some courts have held that an accident may

12 exist when an intentional act results in something "no reasonable mind . . . , under the

13 circumstances," could have foreseen. *Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 136 Wash. App.

14 531, 539 (2007). In other words, "where the insured acts intentionally but claims that the result

15 was unintended, the incident is not an accident if the insured knew or should have known facts

16 from which a prudent person would have concluded that the harm was reasonably foreseeable."

17 *See Ham & Rye*, 142 Wash. App. at 16.

18       In an unpublished opinion, the Ninth Circuit considered whether damage resulting from a

19 mistake of law may constitute an accident. The policyholder in *Aetna Casualty and Surety*

20 *Company, Inc. v. Puget Sound Power & Light Co.* built a hydroelectric dam that diverted water

21 away from a tribal reservation. 880 F.2d 1323, *1 (9th Cir. 1989). The tribe sued for violations of

22 its water and fishing rights. *Id*. The policyholder argued that there was a duty to defend because

23 it did not realize that diverting water from the tribe was illegal, rendering the conduct accidental.

24

1    *Id.* at \*3. However, because the tribe's injuries were the "natural consequence" of building the

2    dam and there was no "additional unexpected, independent or unforeseen happening," the court

3    held that the alleged injury was not caused by an "accident" or "occurrence." *Id.* at \*4-6.

4            Here, Burns asserts a similar mistake of law defense that is similarly unpersuasive.

5    Although the State's complaint alleges Burns lacked knowledge about Washington's laws

6    protecting servicemembers, it does not allege that there was any additional "unforeseen

7    happening" that caused the injury to Vaughn's property. Like the construction of the dam in

8    *Puget Sound Power*, Burns' intentional conduct alone was the means through which Vaughn and

9    other servicemembers lost possession of their vehicles. Nor was the resulting harm to Vaughn

10   and other servicemembers' property unforeseeable. To the contrary, depriving the previous

11   owner of possession is the perfectly natural consequence of selling a vehicle at auction. The

12   State's complaint therefore does not allege an "accident" or "accidental" damage because both

13   the means and result were foreseeable.

14           Burns' argument that a policyholder's legally ignorant actions can lead to "accidental"

15   injury misses the mark in several respects. First, Washington case law clearly indicates that an

16   "accident" generally requires some unforeseen "happening" in the physical chain of causation

17   that brought about the damage. *See Butler*, 118 Wash.2d at 401. Here, Burns' ignorance of the

18   relevant law was not such a "happening." Second, in the rare instances when intentional means

19   result in accidental damage, the harm must be *objectively* unforeseeable and is measured in terms

20   of the *actual* change in circumstances, not in abstract legal terms. Physically unlikely effects

21   from shooting a gun or lighting a fire therefore may qualify as unforeseeable but violating an

22   obscure law would not. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wash. 2d 99, 108 (1988);

23   *Ham & Rye*, 142 Wash. App. at 17. Even if the bare violation of a law could be considered the

24

"result" of an act, it must also be objectively unforeseeable. *See Ham & Rye*, 142 Wash. App. at 16. Here, a reasonable operator of a towing company would be aware of all laws governing the sale of impounded vehicles, making any resulting harm foreseeable.[3]

Burns also claims that precluding coverage for selling vehicles conflicts with the Garagekeepers endorsement's coverage for injury related to the "business of selling" vehicles. However, a reasonable purchaser of insurance would not conclude that the policy covers illegal auto sales. Under "Coverage," the policy states that it applies to losses that occur while a vehicle is "left in the insured's care while the insured is attending, servicing, repairing, parking, or storing it in [their] garage operations." Dkt. #22, Ex. B, at 27 (internal quotations omitted). Examples include damage from fire, theft, vandalism, and collisions. *Id*. This language clearly focuses on harm that could befall a vehicle while it is in the insured's possession at the garage, not while it is being sold at auction. Burns' argument derives from the definition of "garage operations," which includes "selling" vehicles among the various purposes for such a business. *Id*. at 29. But while the ultimate purpose of storing a vehicle may be selling it, this does not mean coverage extends to the actual point of sale. The Insurers thus have no duty to defend or indemnify Burns under the CGL policy, Garagekeepers endorsement, or Business Auto policy.

b.      *Whether there is Potential Coverage under the Motor Truck Cargo Legal Liability Policy*

The Insurers argue that they have no duty to defend under the Motor Truck Cargo Legal Liability policy because the State's lawsuit does not allege injury arising from a bill of lading,

---

[3] Burns emphasizes that the Garagekeepers endorsement defines "loss" as "direct and accidental loss or *damage*" and therefore only requires that the result of the policyholder's conduct must be unintentional. Dkt. #22, Ex. B, at 29 (emphasis added). But this definitional difference does not change the fact that, to be "accidental," a result must be both objectively unforeseeable and consist of the real-world consequences of the insured's conduct—i.e., servicemembers' physical loss of their vehicles. Here, neither of these are satisfied.

1    contract of carriage, or shipping receipt. Burns does not argue that the Motor Truck Cargo Legal

2    Liability policy applies.

3       The Court agrees with the Insurers. The injuries described in the State's complaint arise

4    from violations of two state statutes, not from a bill of lading, contract of carriage, or shipping

5    receipt issued by Burns. *See* Dkt. #22, Ex. B, at 31. There is no duty to defend or indemnify

6    under the Motor Truck Cargo Legal Liability policy.

7                  **CONCLUSION**

8       For the above reasons, the Insurers Motion for Summary Judgment is GRANTED. The

9    Insurers have no duty to defend or indemnify the Defendants in the underlying lawsuit brought

10    by the State of Washington, Pierce County Superior Court Cause No. 18-2-11257-1. Burns'

11    counterclaim for declaratory judgment is DISMISSED for mootness.

12       IT IS SO ORDERED.

13

14       Dated this 20th day of June, 2019.

15

16                             _____

                              Ronald B. Leighton

17                             United States District Judge

18

19

20

21

22

23

24